United States Court of Appeals

Eleventh Circuit.

No. 94-5321.

UNITED STATES of America, Plaintiff-Appellee,

v.

Brian KING, Defendant-Appellant.

July 16, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 94-8037-CR-DTKH), Daniel T.K. Hurley, Judge.

Before COX and BARKETT, Circuit Judges, and BRIGHT[*], Senior Circuit Judge.

BARKETT, Circuit Judge:

Brian King appeals his conviction and sentence for possession of stolen property under 18 U.S.C. § 2315. King argues that the district court committed reversible error by inferring in the presence of the jury that the government had established an element of the offense. He also argues that the court sentenced him based on relevant conduct that was unsupported by the record. We affirm King's conviction but vacate his sentence and remand for resentencing.

The government charged that, while in West Palm Beach, King received and tried to sell two paintings that had been stolen from the Greenwich, Connecticut home of Walter Bartlett. To convict King under § 2315, the government was required to prove that the paintings crossed state lines, that the paintings were worth at least $5,000, and that King received, possessed or sold them with

_____

[*]Honorable Myron H. Bright, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

knowledge that they were stolen. *See* 18 U.S.C. § 2315.

At trial, Bartlett testified that he was the owner of the two paintings that King was charged with possessing, and that the two paintings, along with twelve others, and several antiques had been stolen during a burglary of his Greenwich, Connecticut home. He further testified that King was a friend of his son and had been a houseguest in his home. An employee of the office building where King worked in West Palm Beach, Michelle Schossler, testified that King asked her if he could use storage space in the building for a shipment he was expecting. She also testified that King used the telephone in her presence, identified himself as "Bob or Rob" and inquired whether his "shipment was there." She further testified that, some time later, King remarked that his shipment had just arrived and pointed out a large white unmarked van that was pulling up. She testified that she thereafter saw King photographing "15 or so" paintings in a storage room she had allowed him to use. Schossler was able to positively identify two of the paintings from photos of Bartlett's paintings. A West Palm Beach antique dealer testified that King contacted him in an effort to sell some of the paintings, and further testified that King brought three of the paintings in to his store. The jury convicted King of possession of stolen property.

At King's sentencing, the government argued that King should be sentenced based on the value of all the property taken in the burglary of Bartlett's home because the burglary was "relevant conduct" to King's possession of stolen property. The district

court agreed with the government and valued the loss at $300,000,[1] which included all the stolen property and established King's offense level at 16 with a corresponding guidelines range of 41 to 51 months,[2] and sentenced King to 42 months.

King first argues that the trial judge committed plain error when, in the presence of the jury, he asked the parties if they objected to the owner taking "his paintings" home.[3]  King asserts that the comment conveyed to the jury that the judge believed the paintings belonged to Bartlett and, because Bartlett lives in Connecticut, that the paintings had travelled in interstate commerce.  King argues that he was prejudiced because the judge's comment left him with only one statutory element to disprove:  that he knew the paintings were stolen.  At trial however, King did not challenge the government's theory that the paintings had been stolen from Bartlett's home in Connecticut.  Indeed, King's theory of defense was that Bartlett's son had stolen the paintings.  Accordingly, we find this argument meritless and affirm King's conviction.

King next argues that the district court only should have held him responsible for the value of six paintings, and not for

---

[1]Bartlett valued the stolen property at $300,000, the police report indicated that the total value of items stolen was $196,000.

[2]Based on a property value of more than $200,000, the base offense level of 4 was increased 10 levels, *see* U.S.S.G. § 2B1.1(b)(1)(K).  King was also given a two level increase for more than minimal planning, *see id.* § 2B1.1(b)(4)(A).

[3]Because King failed to object at trial, we apply a plain error standard.  *United States v. Olano,* 507 U.S. 725, 736-37, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993).

the value of all the items taken during the burglary. We disagree. Among other evidence, Schossler, the employee of the office building where King worked, testified that she saw King photographing "15 or so" paintings, two of which she positively identified from Bartlett's photographs. We therefore conclude that the district court did not err in including the value of all fourteen paintings in the property value calculation.

We find, however, that the district court erred in including the stolen antiques in the property value calculation. The government offered no evidence that King possessed the stolen antiques. The antiques only could be included in the property value calculation by finding that King committed the burglary. But the district court's finding that King committed the burglary was too speculative based on the evidence before it—that King was a friend of Bartlett's son and had been in Bartlett's home at one time—to support this conclusion.

Accordingly, we VACATE King's sentence and REMAND this case to the district court for resentencing based only on the value of the fourteen paintings.